# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------- X

BEN-YISHAI, *et al.*,

                     Plaintiffs,                       Case No:

            -against-                      18-cv-3150 (RCL)

THE SYRIAN ARAB REPUBLIC, *et al*,

                     Defendants.

-------------------------------------------------------------------- X

---

# PLAINTIFFS' MEMORANDUM OF LAW IN
# SUPPORT OF MOTION FOR JUDGMENT BY DEFAULT

---

## **TABLE OF CONTENTS**

I.     Introduction ................................................................................................................2

II.    Legal Standards for Default Judgments Under the FSIA ...........................................3

     A.     Personal Jurisdiction ......................................................................................4

     B.     Subject Matter Jurisdiction ............................................................................6

     C.     Statute of Limitations.....................................................................................9

     D.     Satisfactory Evidence to Establish Plaintiffs' Claims and Damages....................11

            i.     Pain and Suffering ..............................................................................14

            ii.     Economic Damages ............................................................................15

            iii.     Solatium Damages ............................................................................15

            iv.     Punitive Damages ............................................................................19

            v.     Findings of Fact and Conclusions of Law ...............................................20

III.    The Court May Refer the Assessment of Damages to a Special Master ..........................21

IV.    The Court Should Award Pre-Judgment Interest.................................................................22

Conclusion ...................................................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Islamic Rep. of Iran*, 574 F. Supp. 2d 15 (D.D.C. 2008) ...................................12, 15, 20

*Alejandre v. Rep. of Cuba*, 996 F. 1239 (S.D. Fla. 1997)............................................................12

*Anderson v. Islamic Rep. of Iran*, 753 F. Supp. 2d 68 (D.D.C. 2010)..........................................17

*Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995)...........................................................12

*Asemani v. Islamic Rep. of Iran,* 556 U.S. 1210 (2009) ...............................................................10

*Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48 (D.D.C. 2011).14, 19, 20

*Bank Markazi v. Peterson,* 578 U.S. 212 (2016) ..........................................................................10

*Beer v. Islamic Rep. of Iran*, 798 F. Supp. 2d 14 (D.D.C. 2011)..................................................20

*Bodoff v. Islamic Rep. of Iran,* 907 F. Supp. 2d 93 (D.D.C. 2012) ........................................19, 20

*Braun v. Islamic Rep. of Iran*, 228 F. Supp. 3d 64 (D.D.C. 2017) .............3, 4,6, 11, 12, 14, 15, 18

*Brayton v. U.S. Trade Rep.*, 641 F. Supp. 3d 521 (D.C. Cir. 2011) ..............................................15

*Brewer v. Islamic Rep. of Iran*, 664 F. Supp. 2d 43 (D.D.C. 2009) .......................................4, 5, 6

*Bundy v. Jackson*, 641 F.2d 934 (D.C. Cir. 1981) ........................................................................11

*Calderon-Cardona v. Democratic Rep. of Korea*, 723 F. Supp. 2d 441 (D.P.R. 2010)............6, 11

*Campuzano v. Islamic Rep. of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003) ...........................8, 12, 17

*Cohen v. Iran*, 268 F. Supp. 3d 19 (D.D.C. 2017) ........................................................................16

*Cohen v. Islamic Rep. of Iran*, 238 F. Supp. 3d 71 (D.D.C. 2017).................................................4

*Cohen v. Islamic Rep. of Iran*, 17-cv-01214 (D.D.C 2019).................................................. *passim*

*Commercial Bank of Kuwait v. Rafidain Banks*, 15 F.3d 238 (2d Cir. 1994)...............................12

*Day v. McDonough*, 547 U.S. 198, 205 (2006) ..............................................................................9

*Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F. Supp. 2d 415 (D.C. Cir. 1991)...................3, 4

*Elahi v. Islamic Rep. of Iran*, 124 F. Supp. 2d 97 (D.D.C. 2000)..............................................12, 14

*Estate of Botvin ex rel. Ellis v. Islamic Rep. of Iran*, 604 F. Supp. 2d 22 (D.D.C. 2009) ............11

*Estate of Botvin v. Islamic Rep. of Iran*, 510 F. Supp. 2d 101 (D.D.C. 2007).............................12

*Estate of Doe v. Islamic Rep. of Iran,* 943 F. Supp. 2d 180 (D.D.C. 2013) ...................................22

*Estate of Heiser v. Islamic Rep. of Iran*, 659 F. Supp. 2d 30 (D.D.C. 2009) ...............................20

*Flatow v. Islamic Rep. of Iran*, 999 F. Supp. 1 (D.D.C. 1998)..................................................12, 15

*Forman v Korean Air Lines Co.,* 84 F3d 446 (D.C. Cir. 1996).......................................................22

*Fraenkel v. Islamic Rep. of Iran*, 892 F. Supp. 3d 348 (D.C. Cir. 2018)..................................15, 18

*Force v. Islamic Rep. of Iran, et al.*, Case No. 16-cv-1468 (D.D.C. 2020) .......................... *passim*

*Gates v. Syrian Arab Rep.*; 580 F. Supp. 2d 53 (D.D.C. 2008) .................................................12, 14

*Gates v. Syrian Arab Rep.*; 646 F. Supp. 3d 1 (D.C. Cir. 2011)..................................................6, 20

*Gill v. Islamic Rep. of Iran*, 249 F. Supp. 3d 88 (D.D.C. 2017) .....................................................18

*Han Kim v. Democratic People's Rep. of Korea*, 774 F.3d 1004 (D.C. Cir. 2014) ...............10, 11

*Hekmati v. Iran*, 278 F. Supp. 3d 145 (D.D.C. 2017)....................................................................16

*Hill v. Iraq*, 328 F.3d 680 (D.C. Cir. 2003) ...........................................................................11,14

*In re Islamic Rep. of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 43 & n.5 (D.D.C. 2009) .......... 10

*James Madison Ltd by Hecht v. Ludwig*, 82 F. Supp. 3d 1085 (D.C. Cir. 1996) ...........................3

*Jerez v. Rep. of Cuba*, 775 F.3d 419 (D.C. Cir. 2014)...................................................................11

*Kaplan v. Central Bank of Islamic Rep. of Iran*, 55 F. Supp. 3d 189 (D.D.C. 2014)...................21

*Kim v. Democratic People's Rep. of Korea*, 87 F. Supp. 3d 286 (D.D.C. 2105) .........................14

*Ministry of Defense & Support for the Armed Forces of Islamic Rep. of Iran v. Elahi,* 556 U.S. 366 (2009)............................................................................................................... 10

*Mohammadi v. Islamic Rep. of Iran*, 782 F. Supp. 3d 9 (D.C. Cir. 2015)......................................6

*Moradi v. Iran*, 77 F. Supp. 3d 57 (D.D.C. 2015) ........................................................................16

*Murphy v. Islamic Rep. of Iran*, 740 F. Supp. 2d 51 (D.D.C. 2010)..............................................18

*Mwani v. Bin Laden*, 417 F.3d 1 (DC. Cir. 2005)...........................................................................3

*Opati v. Rep. of Sudan*, 60 F. Supp. 3d 68 (D.D.C. 2014) ...........................................................22

*Owens v. Rep. of Sudan*, 864 F.3d 751, 801 (D.C. Cir. 2017) ........................................................9

*Price v. Socialist People's Libyan Arab Jamahiriya*, 384 F. Supp. 2d 120 (D.D.C. 2005) ..........14

*Reed v. Islamic Rep. of Iran*, 845 F. Supp. 2d 204 (D.D.C. 2012) ..........................................15, 22

*Rimkus v. Islamic Rep. of Iran*, 750 F. Supp. 2d 163 (D.D.C. 2010) ............................................12

*Roth v. Islamic Rep. of Iran*, 78 F. Supp. 3d 379 (D.D.C. 2015)..............................................12, 13

*Salazar v. Islamic Rep. of Iran*, 370 F. Supp. 2d 105 (D.D.C. 2005) ...........................................13

*Salzman v. Islamic Rep. of Iran*, 2019 U.S. Dist. LEXIS 163632, *8 (D.DC. 2019)...............13

*Spaulding v. Islamic Rep. of Iran*, No. 16-cv-1748, 2018 WL 3235556 at
*3 (N.D. Ohio July 2, 2018) ............................................................................................................10

*Spencer v. Islamic Rep. of Iran*, 922 F. Supp. 2d 108 (D.D.C. 2013) ...........................................21

*Spencer v. Islamic Rep. of Iran*, 71 F. Supp. 3d 23 (D.D.C. 2014) ...............................................20

*Stansell v. Republic of Cuba,* 217 F. Supp. 3d 320 (D.D.C. 2016)................................................16

*Stethem v. Islamic Rep. of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002)........................................14, 15

*Turley v. ISG Lackawanna*, 774 F. 3d 140 (2d Cir. 2014)............................................................15

*Valore v. Islamic Rep. of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010) ............................................6, 20

*Wachsman v. Islamic Rep. of Iran*, 603 F. Supp. 2d 148 (D.D.C. 2009).......................................12

*Wamai v. Rep. of Sudan*, 60 F. Supp. 3d 84 (D.D.C. 2014) ..........................................................21

*Weinstein v. Islamic Rep. of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002) ....................................12, 14

*Worley v. Islamic Rep. of Iran*, 75 F. Supp. 3d 311 (D.D.C. 2014)...........................................11, 21

*Worley v. Islamic Rep. of Iran*, 177 F. Supp. 3d 283 (D.D.C. 2016)..............................................14

*Wultz v. Islamic Rep. of Iran*, 864 F. Supp. 2d 24 (D.D.C. 2012) ...................................................14

*Wyatt v. Syrian Arab Rep.*, 736 F. Supp. 2d 106 (D.D.C. 2010) ....................................................6

*Wyatt v. Syrian Arab Rep.*, 908 F. Supp. 2d 216 (D.D.C. 2012) ..................................................20

**Statutes**

8 U.S.C. § 1101(a)(22)...........................................................................................................7, 17

28 U.S.C. § 1330.........................................................................................................................4

28 U.S.C. § 1350 note ..............................................................................................................18

28 U.S.C. § 1602.........................................................................................................................2

28 U.S.C. § 1604.....................................................................................................................3, 4

28 U.S.C. § 1608 ............................................................................................................. *passim*

28 U.S.C. § 1605A ........................................................................................................... *passim*

18 U.S.C. 2339A .........................................................................................................................7

18 U.S.C. 2339A(b) ....................................................................................................................8

18 U.S.C. 2339(b)(1) ..................................................................................................................8

Fed. R. Civ. P. 4(j)(1) .................................................................................................................4

Fed. R. Civ. P. 55(d) .................................................................................................................11

Fed. R. Civ. P. 55(e) .................................................................................................................11

**Other Authority**

U.S. Dep't of State, State Sponsors of Terrorism, https://www.state.gov/j/ct/list/
c14151.htm.............................................................................................................................17

Restatement (Second) of Torts § 908(1) (1977) .......................................................................20

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR JUDGMENT BY DEFAULT

Plaintiffs respectfully submit this Memorandum in support of their Motion for Default Judgment against the Syrian Arab Republic ("Syria") and the Islamic Rep. of Iran ("Iran") pursuant to 28 U.S.C. § 1608(e); and their request to refer the assessment of damages to a special master pursuant to 28 U.S.C. § 1605A(e).

Also submitted in support of Plaintiff's motion are the following documents:

### Documents Unique to This Case

| | |
|---|---|
| Dkt. 29 | Declaration of Yael Ben-Yishai |
| Dkt. 30 | Declaration of Jacob Ben-Yishai |
| Dkt. 31 | Declaration of Chana Ben-Yishai |
| Dkt. 32 | Declaration of Aviel Ben-Yishai |
| Dkt. 37 | Declaration of Miriam Ben-Yishai |
| Dkt. 38 | Declaration of Yitzhak Ben-Yishai |
| Dkt. 40 | Declaration of Yisrael Ben-Yishai |
| Dkt. 42 | Dr. Rael Strous' Combined Expert Report regarding all plaintiffs |
| Dkt. 42 | Dr. Rael Strous' CV (Exhibit A) |
| Dkt. 42 | Psychiatric Evaluation of Miriam Ben-Yishai (Exhibit E) |
| Dkt. 42 | Psychiatric Evaluation of Yitzhak Ben-Yishai (Exhibit G) |
| Dkt. 42 | Psychiatric Evaluation of Chana Ben-Yishai (Exhibit B) |
| Dkt. 42 | Psychiatric Evaluation of Jacob Ben-Yishai (Exhibit D) |
| Dkt. 42 | Psychiatric Evaluation of Aviel Ben-Yishai (Exhibit C) |
| Dkt. 42 | Psychiatric Evaluation of Yisrael Ben-Yishai (Exhibit H) |

Dkt.42          Declaration of Dr. Michael Soudry regarding economic losses.

Dkt. 43         Declaration of Dr. Marius Deeb

**Evidence Previously Submitted in**
***Force v. Islamic Rep. of Iran*, DDC 16-cv-01468**

Dkt. 41         Declaration of Dr. Patrick Clawson (in that case Dkt. 32) (Exhibit A)

Dkt. 41         Declaration of Dr. Matthew Levitt (in that case Dkt. 31) (Exhibit B)

Dkt. 41         Declaration of Dr. Marius Deeb (in that case Dkt. 30) (Exhibit C)

Dkt. 41         Declaration of Colonel (ret.) Arieh Dan Spitzen (in that case Dkt. 33) (Exhibit D)

Dkt. 41         Transcript of testimony of Dr. Levitt and Colonel (ret.) Arieh Dan Spitzen (in that case Dkt. 104) (Exhibit E)

Dkt. 41         Transcript of testimony of Dr. Marius Deeb and Dr. Patrick Clawson (in that case Dkt. 105) (Exhibit F)

**Evidence Previously Submitted in**
***Cohen v. Islamic Rep. of Iran*, DDC 17-cv-01214**

Dkt. 41         Declaration of Dr. Harel Chorev (in that case Dkt. 21, Exhibits 1-11) (Exhibit G)

Dkt. 41         Declaration of Dr. Patrick Clawson (in that case Dkt. 22) (Exhibit H)

Dkt. 41         Transcript of testimony of Plaintiffs, Dr. Chorev and Dr. Clawson (in that case Dkt. 49) (Exhibit I)

**I.**

**INTRODUCTION**

This is a civil action brought pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*. Plaintiffs are the family of a U.S. national murdered in a terror attack on November 4, 2001.

On December 31, 2018, Plaintiffs filed a Complaint against Syria and Iran seeking damages pursuant to 28 U.S.C. § 1605A for their provision of material support to the Palestinian

Islamic Jihad ("PIJ") that contributed to the terrorist attack at issue in this case. (Dkt. 1). On December 4, 2020, the Court granted Plaintiffs' motion to amend and correct the Complaint so Plaintiffs could seek pre-judgment interest. (Dkt. 22).

Service upon Defendants was perfected under § 1608(a), which governs service on foreign states. Specifically, service upon Syria was attempted by DHL via 28 U.S.C. § 1608(a)(3) through delivery of the required documents (translated into Arabic) to its agent via international courier service, evidenced by a return-receipt. (Dkt. 12, 14). Service upon Iran[1] was attempted by the international courier service DHL via 28 U.S.C. § 1608(a)(3) through delivery of the required documents (translated into Farsi). (Dkt. 8, 9, 14). Subsequently, service via 28 U.S.C. § 1608(a)(4) through diplomatic channels on Syria and Iran was requested on January 28, 2020, and accomplished on August 10, 2020, on Syria and on August 19, 2020, on Iran. (Dkt. 13, 15). The diplomatic notes provide appropriate proof of service as to Syria and Iran. (Dkt. 16, 17). Iran and Syria failed to appear or otherwise respond. On December 3, 2020, the Clerk noted the default of Syria. (Dkt. 19). On February 21, 2021, the Clerk noted the default of Iran. (Dkt. 24).

## II.
## LEGAL STANDARDS FOR DEFAULT JUDGMENTS UNDER THE FSIA

Entry of default judgments in FSIA terrorism cases is not automatic. *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005); *Braun v. Islamic Rep. of Iran*, 228 F. Supp. 3d 64 (D.D.C. 2017); *James Madison Ltd by Hecht v. Ludwig*, 82 F. Supp. 3d 1085, 1092 (D.C. Cir. 1996); *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F. Supp. 2d 415, 424 (D.C. Cir. 1991). Foreign sovereigns are generally immune from suit in U.S. courts. 28 U.S.C. § 1604. The FSIA, however, provides

---

[1] Although the Iranian Ministry of Information and Security ("MOIS") was named as a defendant, service on MOIS was not accomplished. Plaintiffs are not pursuing a claim against MOIS.

narrow exceptions to this general rule. When the requirements of one of these exceptions are met and the foreign state is properly served, the FSIA waives sovereign immunity and provides both subject-matter jurisdiction over the action and personal jurisdiction over the foreign state. 28 U.S.C. § 1604; *Cohen v. Islamic Rep. of Iran*, 238 F. Supp. 3d 71, 80 (D.D.C. 2017); *Braun*, 228 F. Supp. 3d at 74.

As such, in an FSIA case, a default judgment may only be entered when the Court is satisfied that (1) it has subject matter jurisdiction over the claims, (2) personal jurisdiction is properly exercised over the defendants, (3) the plaintiffs have presented satisfactory evidence to establish their claims against the defendants, and (4) the plaintiffs have satisfactorily proven that they are entitled to the monetary damages they seek. *Id*. at 74.

Plaintiffs have satisfied all four requirements sufficient to establish their claims as well as their damages against the defendants, thereby entitling them to a default judgment.

## A.      Personal Jurisdiction

While plaintiffs have the burden of proving personal jurisdiction, they "can satisfy that burden with a *prima facie* showing." *Edmond*, 949 F. Supp. 2d at 424. In doing so, "they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id*.

Federal statute grants district courts personal jurisdiction over foreign states wherever "service has been made under section 1608 of [Title 28]." 28 U.S.C. § 1330(a); *see also* Fed. R. Civ. P. 4(j)(1). Section 1608(a) prescribes several alternative methods to serve a foreign state in decreasing order of preference. § 1608(a); *see generally Brewer v. Islamic Rep. of Iran*, 664 F. Supp. 2d 43, 50-51 (D.D.C. 2009) (discussing service of process under § 1608 in an FSIA terrorism case against a foreign state).

Service on Syria under § 1608(a)(1) and (a)(2) are impossible because no pertinent "special arrangement" exists with Syria and no "international convention" is applicable as to Syria. Plaintiffs complied with the requirements of §1608(a)(3) by attempting to serve Syria copies of the Summons, Complaint, and Notice of Suit, along with a translation of each in Arabic via DHL, using a form of mailing requiring a signed receipt but DHL is no longer providing mail service to Syria. (Dkt. 12, 14). *See* § 1608(a)(3). Plaintiffs also complied with the requirements of § 1608(a)(3) by attempting to serve Iran copies of the Summons, Complaint, and Notice of Suit, along with a translation of each in Farsi via DHL, using a form of mailing requiring a signed receipt but DHL is no longer providing mail service to Iran. (Dkt. 8, 9, 14). *See* § 1608(a)(3). As such, this court has personal jurisdiction over Syria and Iran. *See Brewer*, 664 F. Supp. 2d at 51. Similarly, Plaintiffs complied with the requirements of § 1608(a)(4) by requesting the State Department effect service on Syria and Iran of the Summons, Complaint and Notice of Suit, along with a translation of each in Arabic and Farsi, respectively, via diplomatic means on January 20, 2020. (Dkt. 15). The Clerk mailed the relevant documents to the State Department on August 9, 2020. (Dkt. 17). On August 19, 2020, the State Department informed the clerk that the documents had been delivered to Iran. (Dkt. 16). As the State Department advised, "[B]ecause the United States does not maintain diplomatic relations with the Government of Iran," the documents were transmitted to the embassy of Switzerland in Iran, which then transmitted the materials to the Iranian Ministry of Foreign Affairs on August 19, 2020. (Dkt. 16). The Swiss Embassy reported that the Iranian Ministry of Foreign Affairs "refused" to accept the documents that same day. (Dkt. 16) After the Islamic Rep. of Iran failed to respond, the Clerk entered a default. (Dkt. 24). With respect to Syria, the State Department advised, "[b]ecause the United States Embassy operations in the Syrian Arab Republic are

currently suspended," the documents were transmitted to the Embassy of the Czech Republic in Damascus, which then transmitted the materials to the Syrian Ministry of Foreign Affairs on August 10, 2020. (Dkt. 17). The Embassy of the Czech Republic in Damascus reported that the Syrian Ministry of Foreign Affairs "refused" to accept the documents that same day. (Dkt. 17) After Syria failed to respond, the Clerk entered a default. (Dkt. 19). Accordingly, this court has personal jurisdiction over Syria and Iran.

## B.      Subject Matter Jurisdiction

In 2008 Congress enacted a comprehensive terrorism exception to the FSIA that waived a foreign state's sovereign immunity and provided terrorism victims with a cause of action in cases involving certain types of state sponsored terrorism. *See Brewer*, 664 F. Supp. 2d 43, 51 (D.D.C. 2009). This terrorism exception is now codified as 28 U.S.C. § 1605A and has previously been applied to both Iran and Syria where numerous courts have found those countries have supported terrorist attacks that harmed American nationals. *See, e.g., Braun*, 228 F. Supp. 3d 64; *Valore v. Islamic Rep. of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010); *Gates v. Syrian Arab Rep.*; 646 F. Supp. 3d 1 (D.C. Cir. 2011); *Wyatt v. Syrian Arab Rep.*, 736 F. Supp. 2d 106 (D.D.C. 2010). *See also Calderon-Cardona v. Dem. People's of Korea*, 723 F. Supp. 2d 441, 457 (D.P.R. 2010).

Specifically, the terrorism exception-covering claims against designated state sponsors of terrorism-provides that:

> A foreign state shall not be immune…[when] money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing…or the provision of material support or resources for such an act if…engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1); *Brewer*, 664 F. Supp. 2d at 50; *Mohammadi v. Islamic Rep. of Iran*, 782 F. Supp. 3d 9, 13 (D.C. Cir. 2015).

The FSIA also creates a "private right of action" for U.S. nationals.[2] 28 U.S.C. § 1605A(c). In actions brought under § 1605A(c), American nationals harmed by state-sponsored terrorism may seek "money damages" including economic damages, solatium, pain, and suffering, and punitive damages." *Id*.

First, both Iran and Syria "were designated as a state sponsor of terrorisms at the time of the act" that caused Plaintiffs' harm. Section 1605A(h)(6) defines a "state sponsor of terrorism" as "a country the government of which the Secretary of State has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 App. U.S.C. 2405(j))…is a government that has repeatedly provided support for acts of international terrorism." Iran has been so designated continuously since 1984 and Syria has been so designated continuously since 1979.

Second, the victim, decedent Shoshana Ben-Yishai, was an American national at the time of the attack. The victim via her estate and family members who are U.S. nationals, are seeking money damages for the death of their beloved family member Shoshana arising from the terrorist attack that was committed by the PIJ, and materially supported by Syria and Iran.

Third, FSIA § 1605A(H)(3) defines "material support or resources" as having the same meaning as in 18 U.S.C. 2339A. The latter statutes define "material support or resources" broadly to include:

> any property, tangible or intangible, or service, including currency or monetary
> instruments or financial securities, financial services, lodging, training, expert

---

[2] "National" is defined as "the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(22))" 28 U.S.C. § 1605A(h)(5).

advice or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (one or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

§ 2339(b)(1). It further defines "training" as "instruction or teaching designed to impart a specific skill, as opposed to general knowledge" and defines "expert advice or assistance" as "advice or assistance derived from scientific, technical or other specialized knowledge." § 2339A(b). The allegations in Plaintiffs' Complaint and the evidence presented by Plaintiffs leaves no doubt that Syria and Iran provided material support to the terrorist PIJ. Among other things, Syria and Iran provided the PIJ with funding assistance. *See* declaration of Plaintiffs' liability expert, Dr. Marius Deeb (Dkt. 43). *See also Force v. The Islamic Rep. of Iran, et al.*, Case No. 16-cv-1468, Dkt. 29-32, 33, 54, 107, for the expert declarations and testimony of Colonel (ret.) Aryeh Spitzen, Dr. Marius Deeb, Dr. Matthew Levitt and Dr. Patrick Clawson in that case and *Cohen v. The Islamic Rep. of Iran, et al.*, Case No. 17-cv-01214, Dkt. 21, 21-1-21-11, 22, 49, 104, 105, for the expert declarations and testimony of Dr. Harel Chorev and Dr. Clawson.

Fourth, Congress specifically permitted actions for "*personal injury...that was caused by an act of...extrajudicial killing*." § 1605A(a)(1) (emphasis added). Shoshana Ben-Yishai's violent murder was indeed caused by "an act of...extrajudicial killing" within the meaning of 28 U.S.C. § 1605(A)(a)(1) as that term is defined by § 1605A(h)(7), which adopts the definition of extrajudicial killing contained in the Torture Victims Protection Act ("TVPA") (codified as a note to 28 U.S.C. § 1350). The TVPA defines "extrajudicial killings" as 'a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized peoples." Thus, § 1605A(a)(1) does not require that the plaintiff be killed or that injury to a plaintiff result from

the actual "extrajudicial killing" (e.g., that a bullet pass through and kill one person and strike and injure another) but rather from an "act of extrajudicial killing". *See Campuzano v. The Islamic Rep. of Iran*, 281 F. Supp. 2d 258, 270-71 (D.D.C. 2003) (holding that injuries suffered by plaintiffs who were injured in a bombing in which non-plaintiffs were killed were caused by an act of extrajudicial killing within the meaning of FSIA § 1605(a)(7)). Thus, where a terrorist commits an act that could kill but winds up merely injuring the victim, the terrorist has nevertheless committed an "act of extrajudicial killing," and the victim can recover for "personal injury" under § 1605A(a)(1).

Fifth, as required by § 1605A(a)(1) and (c), all the Plaintiffs' claims arise from a personal injury or death. The damages they may seek include "economic damages, solatium, pain and suffering, and punitive damages." § 1605A(c). In addition, Plaintiffs may raise claims for related "foreseeable property loss, whether insured or uninsured, third-party liability, and loss claims under life and property insurance policies." § 1605A(d).

Therefore, this Court has jurisdiction over, and Defendants are not immune from, this action.[3]

C.    **Statute of Limitations**

The statute of limitations does not bar this action. The 10-year statute of limitations "is not jurisdictional" and is an affirmative defense waived by the Defendants' default. *Owens v. Rep. of Sudan*, 864 F.3d 751, 801, 804 (D.C. Cir. 2017) ("Sudan has forfeited its affirmative defense [regarding the statute of limitations] by failing to raise it in the district court."). Because § 1605A's statute of limitations defense is not jurisdictional, "courts are under no obligation to

_____

[3] Because the attack did not occur within the Iranian or Syrian territory, Plaintiffs are not required to offer Defendants an opportunity to arbitrate. *See* 28 U.S.C. § 1605A(a)(A)(iii).

raise the time bar *sua sponte*." *Day v. McDonough*, 547 U.S. 198, 205 (2006) (emphasis removed).

Iran "has never appeared [on the merits] in any FSIA terrorism action to date," but has occasionally appeared at the enforcement stage to prevent the attachment of its assets. *In re Islamic Rep. of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 43 & n.5 (D.D.C. 2009). Iran's failure to appear before this Court is not due to ignorance of the U.S. legal system or lack of knowledge about this litigation. Iran is a highly experienced consumer of U.S. legal services and has a strong track record in U.S. courts.[4] Iran's absence in this litigation is a calculated decision. Cognizant that "[j]ustice requires accountability for Iran," *In re Islamic Rep. of Iran Terrorism Litig.*, 659 F. Supp. 2d at 134, the world's premier exporter of terrorism, this Court should seek to do it no favors. Courts must be mindful that Congress enacted § 1605A, FSIA's terrorism exception, and § 1608(e) with the "aim to prevent state sponsors of terrorism—entities particularly unlikely to submit to this country's laws—from escaping liability for their sins." *Han Kim v. Democratic People's Rep. of Korea*, 774 F.3d 1004, 1047-48 (D.C. Cir. 2014) (quoting 28 U.S.C. § 1608(e)). If Iran wanted to appear before this Court and raise the statute of limitations, it could have done so. If it still wants to appear and assert that defense, nothing is stopping it from moving to vacate its default. Iran does not do so because it does not care about its liability to the Plaintiffs, nor does it accept any recognition of the laws of the United States. Moreover, it pays no concern to the lives of innocent people around the world or the sovereignty of the nations in which they reside. Plaintiffs seek to hold it accountable for its atrocities. This

---

[4] Iran litigates in U.S. courts when it suits Iran's purposes. *See, e.g., Islamic Rep. of Iran v. Pahlavi*, 62 N.Y.2d 474 (NY 1984); *Ministry of Defense & Support for the Armed Forces of Islamic Rep. of Iran v. Elahi,* 556 U.S. 366 (2009); *Bank Markazi v. Peterson,* 578 U.S. 212 (2016) (involving bank owned by government of Iran); *Asemani v. Islamic Rep. of Iran,* 556 U.S. 1210 (2009) (denying Iran's petition for writ of certiorari).

Court is under no obligation to run to Iran's rescue and should not do so. *Spaulding v. Islamic Rep. of Iran*, No. 16-cv-1748, 2018 WL 3235556 at *3 (N.D. Ohio July 2, 2018). Quite to the contrary: It should detest the thought of doing so.

## D.       Satisfactory Evidence to Establish Plaintiffs' Claims and Damages

The FSIA requires that a default judgment against a foreign state be entered only after a plaintiff "establishes his claim or right to relief by evidence that is satisfactory to the Court." 28 U.S.C. § 1608(e). This has been interpreted to impose the same standard for entry of default judgments against the U.S. government as set forth in Fed. R. Civ. P. 55(d) (previously Rule 55(e)).[5] While the "FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide, requiring only that it be 'satisfactory to the court,'" courts must be mindful that Congress enacted § 1605A, FSIA' with the "aim[ ] to prevent state sponsors of terrorism-entities particularly unlikely to submit to this country's laws-from escaping liability for their sins." *Han Kim*, 774 F.3d at 1047-48 (quoting 28 U.S.C. 1608(e)). With this objective in mind, the D.C. Circuit has instructed that "courts have the authority-indeed, we think, the obligation-to 'adjust [evidentiary requirements] to…differing situations.'" *Braun*, 228 F. Supp. 3d at 64 (quoting *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981)); *Hill v. Iraq*, 328 F.3d 680, 684-85 (D.C. Cir. 2003).

Therefore, although the Court may not simply accept a complaint's unsupported allegations as true, it may-and perhaps must, *see Hill*, 328 F. Supp. 3d at 684-85, "rely upon

---

[5] *Jerez v. Rep. of Cuba*, 775 F.3d 419, 423 (D.C. Cir. 2014); *see also* H.R. REP. No. 94-1487, at 26 (1976) (stating that § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. government under rule 55(e), F.R. Civ. P."); *Estate of Botvin ex rel. Ellis v. Islamic Rep. of Iran*, 604 F. Supp. 2d 22, 26 (D.D.C. 2009); *Calderon-Cardona*, 723 F. Supp. 2d 441, 444 (D.P.R. 2010).

unconverted factual allegations that are supported by affidavits." *Worley v. Islamic Rep. of Iran*, 75 F. Supp. 3d 311, 319 (D.D.C. 2014); *Braun*, 228 F. Supp. 3d at 64; *Acosta v. Islamic Rep. of Iran*, 574 F. Supp. 2d 15 (D.D.C. 2008); *Roth v. Islamic Rep. of Iran*, 78 F. Supp. 3d 379, 386 (D.D.C. 2015) ("Courts may rely on uncontroverted factual allegations that are supported by affidavits.") (citing *Rimkus v. Islamic Rep. of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010)); *Gates v. Syrian Arab Rep.*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008) (quoting *Estate of Botvin v. Islamic Rep. of Iran*, 510 F. Supp. 2d 101, 103 (D.D.C. 2007)); aff'd, 646 F.3d 1 (D.D.C. 2011); *Elahi v. Islamic Rep. of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000) (citing *Alejandre v. Rep. of Cuba*, 996 F. 1239, 1243 (S.D. Fla. 1997)), *see also Flatow v. Islamic Rep. of Iran*, 999 F. Supp. 1 (D.D.C. 1998). Plaintiffs are therefore entitled to establish their proof in FSIA default judgment proceedings via affidavits and expert reports. *Wachsman v. Islamic Rep. of Iran*, 603 F. Supp. 2d 148 (D.D.C. 2009), *Campuzano*, 281 F. Supp. 2d at 268.

Plaintiffs note that the FSIA does not require evidentiary hearings nor any explicit findings "where the record shows that the plaintiffs provided sufficient evidence in support in support of its claims." *Commercial Bank of Kuwait v. Rafidain Banks*, 15 F.3d 238, 242 (2d Cir. 1994); *see also Kim*, 774 F. Supp. 3d at 105-51 (relying on affidavits in reversing and remanding for District Court to enter a default judgment without an evidentiary hearing); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir. 1995) ("Use of affidavits in granting default judgments does not violate either due process or the FSIA"). In the instant case, Plaintiffs submit they have fully supported their motion with the sworn expert declaration from Dr. Marius Deeb regarding Syria's material support of the terrorist PIJ. (Dkt. 43).[6] Plaintiffs also rely upon the expert

---

[6] Although prior decisions in this district "have…frequently taken judicial notice of earlier, related proceedings," *Rimkus v. Islamic Rep. of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010), that does not mean that the Court should simply accept the facts found in the earlier

declarations and testimony of Dr. Patrick Clawson and Dr. Matthew Levitt regarding Iran's provision of material support to the PIJ and Dr. Marius Deeb regarding Syria's provision of material support to the PIJ, as well as Colonel (ret.) Arieh Dan Spitzen's expert declaration and testimony regarding the PIJ and Iran and Syria's material support of the PIJ. *See Force v. The Islamic Rep. of Iran, et al.*, Case No. 16-cv-1468 (DDC), Dkt. 29-33, 104-105.

Plaintiffs further rely upon the expert declaration and testimony of Dr. Harel Chorev regarding the PIJ's responsibility for the attack in this case and Dr. Clawson's expert declaration, as well as his testimony, regarding Iran's material support to the PIJ. *See Cohen v. The Islamic Rep. of Iran, et al.*, Case No. 17-cv-01214 (DDC), Dkt. 21, 21-1-21-11, 22, 49. Besides the above, Plaintiffs have submitted sworn declarations regarding the attack, an economist regarding Shoshana's estate's economic damages and a psychiatric expert report regarding each Plaintiff's psychological and emotional damages. (Dkt. 29-32, 37-40; Dkt. 42, Exhibits B-H).

In creating a private right of action for victims of state-sponsored terrorism, Congress also provided that such foreign states are liable for money damages including "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. 1605A(c). "To obtain damages against a non-immune foreign state under the FSIA, a plaintiff must provide that the consequences of the foreign state's conduct were reasonably certain (i.e., more likely than not) to occur, and must prove the amount of damages by a reasonable estimate consistent with this [Circuit]'s application of the American rule on damages." *Roth*, 78 F. Supp. 3d at 402 (quoting

---

opinion, which would amount to an exercise of collateral estoppel. *See Weinstein v. Islamic Rep. of Iran,* 175 F. Supp. 2d 13, 20 (D.D.C. 2001) ("[F]indings of fact made during this type of one-sided [FSIA] hearing should not be given a preclusive effect.") The Court may, however, "review evidence considered in" the prior proceeding "without necessitating the re-presentment of such evidence." *Murphy v. Islamic Rep. of Iran*, 740 F. Supp. 2d 51, 59 (D.D.C. 2010). *See Salzman v. Islamic Rep. of Iran*, 2019 U.S. Dist. LEXIS 163632, *8 (D.DC. 2019).

*Salazar v. Islamic Rep. of Iran*, 370 F. Supp. 2d 105, 115-16 (D.D.C. 2005)) (internal quotation marks omitted and alteration in original); *see also Kim v. Democratic People's Rep. of Korea*, 87 F. Supp. 3d 286, 289 (D.D.C. 2015) (quoting *Hill*, 328 F.3d 680, 681 (D.C. Cir. 2003)).

### i.      Pain and Suffering

Claims "for the conscious pain and suffering" inflicted on victims of terrorism are "actionable through their estates." *Gates*, 580 F. Supp. 2d 53, 72 (D.D.C. 2008). While "[p]utting a number on these kinds of harms can be difficult," *Price v. Socialist People's Libyan Arab Jamahiriya*, 384 F. Supp. 2d 120, 134 (D.D.C. 2005), courts "will not simply award what it abstractly finds to be fair." *Weinstein v. Islamic Rep. of Iran*, 184 F. Supp. 2d 13, 34 (D.D.C. 2002). Rather, they "will look at damage awards for pain and suffering in other cases brought under the FSIA." *Id.*

Whenever a victim suffers an injury that did not cause instant death and the victim was conscious for at least some period thereafter, s/he is entitled to damages for pain and suffering. *Worley v. Islamic Rep. of Iran*, 177 F. Supp. 3d 283, 286 (D.D.C. 2016). Where the pain and suffering lasted a few hours or less, the victim is entitled to $1 million. *Baker v. Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 81 (D.D.C. 2011); *Wultz v. Islamic Rep. of Iran*, 864 F. Supp. 2d 24, 37-38 (D.D.C. 2012); *Braun*, 228 F.Supp.3d at 83; *Stethem v. Islamic Rep. of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002) (awarding $1,000,000 for the several minutes after victim was shot and before he died); *Elahi*, 124 F. Supp. 2d 97 (D.D.C. 2000) ($1 million for three or four minutes of pain and suffering).

### ii.      Economic Damages

28 U.S.C. § 1605A entitles victims of state-sponsored terrorism to economic damages. For the most part, the calculation of economic damages is straight-forward and requires only proof of loss. Such damages are generally calculated in FSIA terrorism cases by estimating a decedent's future earning potential based on the individual's work and education and adjusting that amount to account for inflation, rise in productivity, job advancement, and personal consumption. *Stethem*, 201 F. Supp. 2d at 87.

### iii.     Solatium Damages

Title 28 U.S.C. § 1605A(c) allows for an award of solatium damages to close relatives of victims of terrorism. Solatium damages are intended to compensate the immediate relatives of an injured party at least partially for their mental anguish and the loss of the "comfort and society" previously provided by the injured party. *Fraenkel v. Islamic Rep. of Iran*, 892 F. Supp. 3d 348, 356-57 (D.C. Cir. 2018); *Flatow*, 999 F. Supp. 1, 31 (D.D.C. 1998). "Solatium damages, by their very nature, are unquantifiable." *Braun*, 228 F. Supp. 3d at 85 (internal quotation marks omitted). As such, assessing a monetary figure to the multiple layers of harm that a terror victim or the family of a terror victim suffers is extremely difficult. In determining the "reasonable estimate," courts may look to expert testimony and prior awards in the many scores of civil terrorism decisions rendered pursuant to the FSIA. *See Reed v. Islamic Rep. of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012); *Acosta*, 574 F. Supp. 2d 15, 29 (D.D.C. 2008). Indeed, because "[t]here is no objective way to assign any particular dollar value" to these injuries, the courts' primary obligation is "to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." *Turley v. ISG Lackawanna*, 774 F. 3d 140, 162 (2d Cir. 2014); *cf. also Brayton v. U.S. Trade Rep.*, 641 F. Supp. 3d 521, 526 (D.C. Cir. 2011) (holding that treating like

cases alike is "a necessary condition" for avoiding "arbitrary" use of judicial discretion). Accordingly, the monetary judgments entered in this district in FSIA terrorism cases demonstrate an exceptionally broad consensus linking the amount of a judgment to the nature of the familial relationship between the claimant and the deceased. *See Moradi v. Iran*, 77 F. Supp. 3d 57, 72 (D.D.C. 2015); *see also Cohen v. Iran*, 268 F. Supp. 3d 19, 24 (D.D.C. 2017) ("In the interests of fairness…courts try to maintain consistency of awards…among plaintiffs in comparable situations."); *Hekmati v. Iran*, 278 F. Supp. 3d 145, 163 (D.D.C. 2017) (consistency is a "primary consideration"); *Stansell v. Republic of Cuba,* 217 F. Supp. 3d 320, 345 (D.D.C. 2016).

The FSIA grants to any national of the United States a claim for loss of solatium due to an act of terrorism involving personal injury against any foreign state "that is or was a state sponsor of terrorism" at the time of the underlying act of terrorism, provided that the act of terrorism involved "torture, extrajudicial killing,…or the provision of material support or resources for such an act." § 1605A(a)(2)(A)(i) and (c). The elements that must be demonstrated are: the claim must be 1) by a U.S. national, 2) for money damages,[7] 3) the claim must be against a foreign state, 4) that was designated as the state sponsor of terrorism at the time of the attack or within six months thereafter,[8] 5) the underlying injury suffered must be "personal injury or death,"[9] and that personal injury or death must be 6) caused by 7) "an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources" by "an official, employee, or agent of such foreign state while acting within the scope of his or her

---

[7] 28 U.S.C. § 1605A(a)(1).

[8] 28 U.S.C. § 1605A(a)(2)(A)(i)(I).

[9] 28 U.S.C. § 1605A(c).

office, employment, or agency."[10] *See Anderson v. Islamic Rep. of Iran*, 753 F. Supp. 2d 68, 79, 84 (D.D.C. 2010).

The substantive elements are all easily satisfied here as to all Plaintiffs:

The FISA defines "national of the United States" to include a U.S. citizen. § 1605A(5)(h); 8 U.S.C. § 1101(a)(22). The Plaintiffs are all U.S. citizens today, as is demonstrated by their passports or certificates of citizenship, annexed hereto, and are thus all U.S. nationals. (Dkt. 35, Exhibits 1-7). Similarly, they were all U.S. nationals at the time of the decedent's terrorist murder in November 2001.

This is a claim for money damages, as is evident on the face of the complaint and as explained further *infra*.

This is a claim against Syria and Iran, which are foreign states or subdivisions of a foreign state.

Syria and Iran are and were, at all pertinent times, designated state sponsors of terrorism as that term is defined by § 1605A(h)(6). *See* U.S. Dep't of State, State Sponsors of Terrorism, https://www.state.gov/j/ct/list/c14151.htm; *Campuzano*, 281 F. Supp. 2d at 270.

The terror victim suffered serious and permanent bodily injury and/or emotional damages.

The injuries were plainly caused by the PJI's terrorism and Syria's and Iran's material support thereof. *Id.* at 261-62, 269-70 ("[T]he court determines that the bombing was an act of extrajudicial killing that caused the plaintiffs' injuries.").

The term "extrajudicial killing," both when *Campuzano* was decided in 2003 and now, means "a deliberated killing not authorized by a previous judgment pronounced by a regularly

---

[10] 28 U.S.C. § 1605A(a)(1).

constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples." 28 U.S.C. § 1350 note; 28 U.S.C. § 1605A(h)(7); 28 U.S.C. § 1605(e)(1) (2002). The terror attack here at issue, constitute "extrajudicial killing." *Id.* at 270.[11] Further, the terror attack was enabled and were conducted only but-for Syria's and Iran's "provision of material support or resources" *id.* at 262, thus subjecting Syria and Iran to liability for that additional reason. *See also Fraenkel*, 248 F. Supp. 3d 21, 37-38 (D.C. Cir. 2017); *Braun*, 228 F. Supp. 3d at 64.

Many of these elements are plainly established by the documentary evidence submitted herewith. The elements in this claim not independently resolved by the Plaintiffs' documentary evidence have been found met by another court in this district, reviewing precisely the same terror attack asserted against precisely one of the same Defendants, pursuant to clear and convincing evidence. This Court may rely on the evidence produced in *Cohen*, without requiring the Plaintiffs here to re-submit and re-establish that same evidence, to reach its own findings as to those elements that *Cohen* found to be demonstrated with clear and convincing evidence. *Cohen v. Islamic Rep. of Iran*, Dkt. 42, 17-cv-01214 (D.D.C. 2019).

Because Syria and Iran have defaulted and Plaintiffs' claims remain undisputed, Plaintiffs' respectfully submit that upon considering the evidence submitted in *Force and Cohen*, the Plaintiffs have plainly submitted satisfactory evidence as to each of their claims. Further, the Court should review and take judicial notice of the evidence admitted and relied upon in the *Force* and *Cohen* cases with respect to Syria's and Iran's material support to the PIJ without

---

[11] Indeed, a terror attack constitutes an "extrajudicial killing" even if no one died in the attack. That is because the term "extrajudicial killing," as it is defined by 28 U.S.C. § 1605A(h)(7); 28 U.S.C. § 1350 note, encompasses even "attempted extrajudicial killing[s]." *Gill v. Islamic Rep. of Iran*, 249 F. Supp. 3d 88, 98-99 (D.D.C. 2017).

Plaintiffs having to present such evidence again. *See Murphy v. Islamic Rep. of Iran* , 740 F. Supp. 2d 51, 59 (D.D.C. 2010). In *Cohen v. Islamic Rep. of Iran*, 17-cv-01214 (D.D.C 2019), plaintiffs sued Iran seeking to recover for their damages against Iran, which was alleged to have sponsored the terror attack. On July 11, 2019, Judge James E. Boasberg entered judgment on their behalf. The Court found that 1) the PIJ was responsible for the November 4, 2001, terrorist attack in Jerusalem, 2) the Court had jurisdiction over Iran, and 3) that Iran provided material support to the PIJ. *Id*. at pages 4-5, 8-9. The Court also found that the *Cohen* plaintiffs had presented the necessary threshold of evidence to establish Iran's liability under the FSIA. *Id*. The Court entered judgment for compensatory damages for the plaintiffs. *Id*. at 22.

Plaintiffs have submitted compelling evidence of an extremely close relationship with the deceased victim, as well as their acute suffering due to the circumstances surrounding the attack that continue to cause them pain, grief, suffering, and psychological and emotional trauma.

### iv.    Punitive Damages

The Plaintiffs also seek punitive damages, which are awarded not to compensate the victims, but to "punish outrageous behavior and deter such outrageous conduct in the future." *Kim*, 87 F. Supp. 3d at 290 (quoting *Bodoff v. Islamic Rep. of Iran,* 907 F. Supp. 2d 93, 105 (D.D.C. 2012) (internal quotation marks omitted)); *see also* Restatement (Second) of Torts § 908(1) (1977). Punitive damages are warranted where "defendants supported, protected, harbored, aided, abetted, enabled, sponsored, conspired with, and subsidized a known terrorist organization whose modus operandi included the targeting, brutalization, and murder of American citizens and others." *Baker*, 775 F. Supp. 2d, 48, 85 (D.D.C. 2011). The Defendants' conduct in supporting the terrorist PIJ justifies the imposition of punitive damages here.

In determining the appropriate amount of punitive damages, courts consider "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Wultz*, 864 F. Supp. 2d at 41 (quoting *Acosta*, 574 F. Supp. 2d at 30); *Bodoff*, 907 F. Supp. 2d at 105; *see also* Restatement (Second) Torts § 908(1)-(2) (1977). Several approaches have been articulated for calculation of the appropriate amount of punitive damages in state-sponsored terrorism cases. One approach is to multiple the foreign state's "annual expenditures on terrorism" by a factor between three and five. *See Baker*, 775 F. Supp. 2d at 85 (citing *Valore*, 700 F. Supp. 2d at 88-90; *Estate of Heiser v. Islamic Rep. of Iran*, 659 F. Supp. 2d 30, 31 (D.D.C. 2009); *Acosta*, 574 F. Supp. 2d at 31; *Beer v. Islamic Rep. of Iran*, 798 F. Supp. 2d 14, 26 (D.D.C. 2011). This approach, which may result in awards in the billions of dollars, has been used in the case of exceptionally deadly attacks, such as the 1983 bombing of the Marine barracks in Beirut, which killed 241 American military servicemen. *See Baker*, 775 F. Supp. 2d at 85. Other courts award punitive damages based on a ratio between punitive and compensatory damages, *see, e.g., Spencer v. Islamic Rep. of Iran*, 71 F. Supp. 3d 23, 31 (D.D.C. 2014). Another approach awards a fixed amount of $150 million per affected family. *See Wyatt v. Syrian Arab Rep.*, 908 F. Supp. 2d 216, 233 (D.D.C. 2012) (awarding $300 million in total to two victims and their families); *Baker*, 775 F. Supp. 2d at 86 (awarding $150 million each to families of three deceased victims); *Gates*, 580 F. Supp. 2d at 75 (awarding $150 million each to the estates of two victims).

Plaintiffs submit that the Defendants' conduct here supporting terrorism, as outrageous as it is, more closely resembles the conduct in cases awarding $150 million per family rather than the cases in which a multiple of a foreign state's entire sponsorship of terrorism is used.

**v.**     **Findings of Fact and Conclusions of Law**

Plaintiffs are submitting a separate document entitled Proposed Findings of Fact and Conclusions of Law in which the Plaintiffs propose amounts of damages awards for each Plaintiff and on each claim. Plaintiffs respectfully ask that judgment be entered in Plaintiffs' favor for amounts requested in that Proposed Findings of Fact and Conclusions of Law.

### III.
### THE COURT MAY REFER THE ASSESSMENT
### OF DAMAGES TO A SPECIAL MASTER

FSIA Section § 1605A authorizes courts to "appoint special masters to hear damage claims brought under this section." 28 U.S.C. § 1605A. Therefore, it has become commonplace for courts to address liability first and, upon a finding of liability, refer the case to a special master for findings as to damages. *See, e.g., Kaplan v. Central Bank of the Islamic Rep. of Iran*, 55 F. Supp. 189, 3d 200 (D.D.C. 2014); *Wamai v. Rep. of Sudan*, 60 F. Supp. 3d 84, 87 (D.D.C. 2014) (court aided by special masters for assessment of damages); *Worley*, 75 F. Supp. 3d 311, 338-39 (D.D.C. 2014); *Spencer v. Islamic Rep. of Iran*, 922 F. Supp. 2d 108, 109 (D.D.C. 2013). Given the large number of Plaintiffs and the limitations on the Court's time, in the interests of judicial economy, a reference to a special master may be appropriate in this case.

An exemplar order from another case, *Kaplan v. Central Bank of the Islamic Rep. of Iran, et al.* (D.D.C. 10-cv-483), appointing a special master to determine damages and outlining the availability of, and funding for, special masters to determining damages in cases arising under 28 U.S.C. § 1605A, is attached as Ex. 1. If the Court decides to appoint a special master to determine damages, Plaintiffs have no objection to the appointment of Alan L. Balaran, Esq., the same special master as was appointed in *Kaplan*. Attached as Ex. 2 is proposed Administrative Plan for Appointment of Special Masters that could be used in this case.

## IV.
## THE COURT SHOULD AWARD PRE-JUDGMENT INTEREST

Prejudgment interest has been sought by similarly situated Plaintiffs, and awarded by the Court, in numerous prior cases arising from acts of terrorism. *See Reed,* 845 F. Supp. 2d at 214-15 (the Court determined that pre-judgment interest was appropriate on the whole award, including pain and suffering and solatium, but not punitive damages), *see also Opati v. Rep. of Sudan*, 60 F. Supp. 3d 68, 82 (D.D.C. 2014)*, Estate of Doe v. Islamic Rep. of Iran,* 943 F. Supp. 2d 180, 185 (D.D.C. 2013).

The *Doe* court further noted that the proper rate is the prime rate:

> In *Forman*, the leading case to assess prejudgment interest, the D.C. Circuit explained that the prime rate—the rate banks charge for short-term unsecured loans to creditworthy customers—is the most appropriate measure of prejudgment interest, one "more appropriate" than more conservative measures such as the Treasury Bill rate, which represents the return on a risk-free loan. *See* 84 F.3d at 450 (emphasis omitted). In reaching this conclusion, the D.C. Circuit did not expressly consider the best measure of the prime rate, although it approved the "district court's award of prejudgment interest at the prime rate for each year between the accident and the entry of judgment."

*Doe,* 943 F. Supp. 2d at 184 *quoting Forman v Korean Air Lines Co.,* 84 F3d 446, 450 (D.C. Cir. 1996).

In this case, the Court should award pre-judgment interest at the prime rate for each year since the plaintiffs' injuries. Plaintiffs would be pleased to submit calculations of the interest amounts if that would assist the Court.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for a judgment by default and enter judgment in the Plaintiffs' favor in the

amounts set forth in the proposed Findings of Fact and Conclusions of Law which Plaintiffs will

be submitting in this case.

Dated:    Brooklyn, New York
          March 7, 2022

                                        Respectfully submitted,

                                        THE BERKMAN LAW OFFICE, LLC
                                        *Attorneys for Plaintiffs*

                                        By:  _____
                                              Robert J. Tolchin
                                        111 Livingston Street, Suite 1928
                                        Brooklyn, New York 11201
                                        718-855-3627

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the date indicated below a true copy of the

foregoing was served via ECF on all counsel of record herein.

Dated: Brooklyn, New York
        March 7, 2022

Robert J. Tolchin